UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:20-cr-395-6 |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| DANIEL GWIN, | ) | |
| | ) | |
| DEFENDANT. | ) | |

The Court is in receipt of a correspondence from defendant Daniel Gwin ("Gwin") in which he requests an order enforcing the Court's judgment as to restitution. (Doc. No. 378 (Motion).) Plaintiff United States of America (the "government") has filed a response opposing any court-ordered adjustment to Gwin's Inmate Financial Responsibility Program ("IFRP") agreement. (Doc. No. 380 (Response).) Without leave, Gwin filed a reply (Doc. No. 387), which the Court has considered.

On July 23, 2020, Gwin was charged for his role in a fraud conspiracy involving an investigational drug study. (*See generally* Doc. No. 1 (Indictment).) On January 19, 2023, Gwin entered a guilty plea to the charges against him in the indictment. (Minutes of Proceedings [non-document], 1/19/2023.) On May 12, 2023, the Court sentenced Gwin to a custody term of 30 months. (Doc. No. 326 (Judgment); Minutes of Proceedings [non-document], 5/12/2023.) As part of his sentence, Gwin was ordered to pay a special assessment of $900.00 and restitution in the amount of $2,841,792.00. (Doc. No. 326, at 6.)

With respect to the payment of restitution, the Court's judgment provided:

**Restitution:** The defendant must pay restitution in the amount of $2,841,792, through the Clerk of the U.S. District Court. Restitution is due and payable immediately. The defendant must pay 25% of defendant's gross income per month, through the Federal Bureau of Prisons Inmate Financial Responsibility Program. If a restitution balance remains upon release from imprisonment, payment is to commence no later than 60 days following release from imprisonment to a term of supervised release in monthly payments of at least a minimum of 10% of defendant's gross monthly income during the term of supervised release and thereafter as prescribed by law. Notwithstanding establishment of a payment schedule, nothing shall prohibit the United States from executing or levying upon property of the defendant before and after the date of this Judgment.

(*Id*. at 5.)

In the present motion, Gwin maintains that the Federal Bureau of Prisons ("BOP") is not properly administering his payments through the IFRP. (*See* Doc. No. 378, at 1.) He complains that while his initial IFRP payment plan only required a monthly payment of $25.00, a more recent plan requires monthly payments of $235.00. According to Gwin, this change was prompted by his Unit Manager who, upon her own initiative, imposed new payment plans for every inmate with more than $450.00 in their prison trust fund account. (*Id*.) Gwin insists that this increase is in violation of the Court's judgment because the monthly payments substantially exceed 25% of the $96.00 monthly wage he receives from his prison job. (*Id*.)

The government opposes the motion, suggesting that Gwin failed to exhaust his administrative remedies, and, more fundamentally, failed to demonstrate that the current IFRP payment plan violates the Court's judgment. (*See generally* Doc. No. 380.) It is the government's position that the 25% payment of gross income dictated by the Court represented the minimum required monthly payment and was meant to take into consideration income from all sources. (*Id*. at 2–4.) The government notes that the fact that Gwin concedes that, at times, he has had more

2

than $450.00 in his prison account demonstrates that his gross income is not limited to his prison wages. (*Id.* at 3–4.)

The IFRP is a work program managed by the BOP to encourage "each sentenced inmate to meet his or her legitimate financial obligations." 28 C.F.R. § 545.10. The program allows for the development of a financial plan so that inmates may satisfy enumerated obligations, such as fines and restitution payments, while incarcerated. 28 C.F.R. § 545.11(a). Through this plan, the BOP develops a payment schedule by considering the inmate's specific financial obligations, institutional resources, and community resources. *See generally* § 545.11. A district court has the authority to delegate the scheduling of restitution payments to the BOP through the IFRP. *Weinberger v. United States*, 268 F.3d 346, 360 (6th Cir. 2001) (holding that "the district court did not improperly delegate the scheduling of Weinberger's restitution payments while in prison to the Bureau of Prisons through the IFRP").

Gwin does not ask this Court to modify its judgment as to restitution or suspend payments during his period of incarceration. (*See* Doc. No. 387, at 2.) Rather, he challenges his payment schedule developed through the IFRP. The Sixth Circuit has stated that federal district courts lack subject matter jurisdiction to manage a defendant's restitution payments under the IFRP. *See United States v. Callan*, 96 F. App'x 299, 301 (6th Cir. 2004) (holding that "[t]he obstacle Callan must overcome on appeal, however, is the complete absence of any constitutional, statutory or decisional authority for the proposition that a federal district court has the subject matter jurisdiction to micromanage the IFRP for the Bureau of Prisons"). Gwin has failed to identify any authority under which this Court may interfere with his IFRP payment schedule, and the Court is unaware of any.

Moreover, because Gwin's challenge to the IFRP payment schedule is effectively a challenge to the manner in which his sentence is executed, his concern is more appropriately addressed in a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *See, e.g., United States v. Torrence*, No. 4:22-cr-644, 2024 WL 3822693, at *3 (N.D. Ohio Aug. 15, 2024) (treating similar motion as a motion for federal habeas corpus relief (citing *Taylor v. Owens*, 990 F.3d 493, 495–96 (6th Cir. 2021) (further citation omitted))); *United States v. Hawk*, No. 2:20-cr-114, 2022 WL 17086386, at *2 (E.D. Tenn. Oct. 25, 2022) (collecting cases). The government argues that Gwin has not indicated that he has exhausted his administrative remedies, nor—according to the government—does it appear from the present motion that he would have had time to do so, given that Gwin's meeting with his Unit Manager occurred recently and he suggests that he has yet to file the BOP form necessary to formally commence the administrative review process. (*See* Doc. No. 378, at 2.)

Gwin does not deny that he has failed to exhaust his administrative remedies. Rather, in response to the government's exhaustion argument, Gwin notes that exhaustion is an affirmative defense. (Doc. No. 387, at 3.) He further suggests that it would be futile to require him to pursue his administrative remedies because every time he asked for a BP-8 or BP-9 form from prison staff "they always want to 'talk about it.'" (*Id*. at 4.) According to Gwin, staff respond in this way "so there is no proof in writing." (*Id*.) Additionally, Gwin explains that he "feels [he] would not have had a fair outcome" because the person who addresses the administrative appeal is the same person who initially makes all IFRP decisions; namely, his Unit Manager. (*Id*. at 3.) Finally, he offers his belief that the present situation requires a more "formal appeal" because he is asking the Court to enforce its Order. (*Id*.)

4

Federal prisoners must exhaust their administrative remedies before initiating a habeas action under § 2241. *Frazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 231–32 (6th Cir. 2006) (citations omitted). A prisoner's failure to exhaust available remedies may be excused, however, where pursuing such remedies would be futile or unable to afford the petitioner the relief he seeks. *Id.* at 236. The Sixth Circuit requires the prisoner to make some affirmative effort to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable. *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 223 (6th Cir. 2011) (citations omitted). A prisoner "cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so[.]" *See Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) (citation omitted).

The administrative remedies available to inmates confined in BOP institutions are set out in the Administrative Remedy Program, found at 28 C.F.R. §§ 542.10–.19. Section 542.13(a) demands that an inmate first present his complaint "informally to staff," thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may file a formal written request (Administrative Remedy Request) to the Warden. *See* § 542.14. If the inmate is not satisfied with the Warden's response, he may appeal to the Regional Director, and, if not satisfied with the Regional Director's response, the inmate may appeal to the Office of General Counsel. *See* § 542.15(a).

Here, the Court finds that Gwin has failed to demonstrate that it would be futile for him to pursue his administrative remedies. While Gwin complains that prison staff respond to his requests for appeal forms by expressing a desire to discuss the matter, the first step of the administrative

5

process *requires an inmate to work informally with staff* to attempt to resolve the complaint "before an inmate submits a Request for Administrative Remedy." § 542.13(b). Gwin offers no reason why he is exempt from this important initial step in the administrative process. Additionally, Gwin's suggestion that his appeal would be futile because it will go back to his Unit Manager is factually incorrect. The Request for Administrative Remedy is directed to the Warden of his facility, not his Unit Manager. § 542.14. Ultimately, regardless of his belief that he will not receive the result he desires, Gwin must exhaust his administrative remedies with the BOP before he seeks federal habeas relief. *See Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 998 (6th Cir. 2004) (A prisoner's subjective belief that he would not be granted relief in the prison grievance process will not excuse his failure to exhaust. (quotations marks and citation omitted)); *see also Napier*, 636 F.3d at 222 (inmate must exhaust even if he subjectively believes the remedy is not available).

But even if the Court reached the merits, Gwin's motion would be denied. Gwin has failed to demonstrate that the BOP's IFRP payment schedule violates the Court's judgment. As the government correctly observes, the Court's judgment required a monthly restitution payment during Gwin's incarceration of 25% of his *gross* income. (Doc. No. 326, at 5.) Included in "gross" income is the income Gwin receives from any source and is not limited to prison wages. *See* 28 C.F.R. § 545.11(b) (requiring payments to be made from institution and non-institution (community) resources). The fact that Gwin states that he has made monthly payments of $235.00 for six months—as well as his concession that his prison trust account has exceeded $450.00—

demonstrates that he has access to income beyond that which he receives from his prison job.[1] (Doc. No. 378, at 1–2.)

Accordingly, for the foregoing reasons, Gwin's motion challenging his IFRP restitution payment schedule is denied.

**IT IS SO ORDERED**.

Dated: October 29, 2024

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[1] In his reply, Gwin concedes that he has received funds from non-institution (community) resources, including family and friends. (Doc. No. 387, at 4; *see* Doc. No. 387-6 (handwritten payment calculations); Doc. No. 387-7 (Prison Trust Account Records).)